Good morning, and pardon me, may it please the court. I'm Joseph Wiseman on behalf of the appellants, your honors. If I may, at the onset, reserve three minutes of my time for rebuttal on this matter. All right. You may, counsel, but please watch your time, because the time that's shown is the total time that's remaining. Very well. I'm aware of that, your honor. And quickly, if I may get the court's indulgence, I'm suffering from an ear infection, so if I have trouble hearing a question or comment, I beg the court's indulgence on that. We are here, your honors, as the court knows, on this issue of qualified immunity with respect to FBI agent McKinley. As the court knows, Judge Walker at the trial court level granted the defense of qualified immunity in this particular case, having ruled, however, that the FBI did, in fact, violate the Hell's Angels constitutional rights. My view is that looking at this case from a de novo point of view, as the court is, that, in fact, the qualified immunity should not have been granted in this case. And the reason I say that is as follows. If one looks at Saucier v. Katz, which the court knows is the most recent Supreme Court indication of how qualified immunity is analyzed, if one looks at the second prong of Saucier v. Katz, the court says that looking at the context of the case, would a reasonable officer believe that there was, for example, in this case, a violation of a Fourth Amendment right? It's important, I may suggest, your honors, to look at the context of the case. We are dealing with a case in which two truckloads of documents were seized. First off, seized pursuant to a warrant issued by a state court judge, which we're not contesting. What we are contesting is what happened after the documents were seized. So what's the nature of your exact challenge in terms of what happened later? And I ask that because I wasn't aware that you asserted that the administrative subpoena exceeded the scope of the prior search. We are not, your honor, directly saying that the administrative subpoena exceeded the scope of the prior search. We are saying that to issue the administrative subpoena, as Judge Walker decided, my clients were entitled to pre-seizure notice. Okay. What's your best case authority for the proposition that your clients were entitled to notice before the administrative subpoena was effectuated? I think my best proposition in the case authority, your honor, is what the district court judge relied upon, which is the confines of the Fourth Amendment, that when there is a situation in which an administrative subpoena is to be executed, in a case in which the parties have an expectation of privacy, and although the government disagrees with that point, Judge Walker did decide they had an expectation of privacy. He merely concluded that at the time a reasonable officer would not have concluded that. But yet having an expectation of privacy. Before you go forward with that, so you're relying on the provisions of the Constitution, and you aren't aware of any case authority that has, other than the judge's, district court judge's interpretation, are there any other cases that have interpreted the Constitution in the way that you are positing today? In the context of an administrative subpoena, your honor, there is not a case directly on point that I can cite to, no. However, I think that if one were to look at the scope of the Fourth Amendment in the context of this particular case, I think a reasonable officer would have concluded that when he or she is going to take possession of two truckloads of documents, after which they were resolved in the trial court, excuse me, in the local superior court, in other words, the facts of the case are such that when these documents were seized pursuant to the original search warrant, they really were not used. In other words, the result of that search, the prosecution of that case really went nowhere. If I'm not mistaken, I think the case was either dismissed or there were outright acquittals. My point is that as soon as those documents were relieved of their obligation, if you will, in the state court litigation, when Mr. McKinley attempted to take possession of those, through the 876 administrative procedure, he should have been given, he should have been required to give my clients pre-seizure notice. Counsel, how do you account for the ruling in United States v. Plunk, which seems to say that there is no express right to challenge subpoenas issued under Section 876? My view of Plunk and Burnett and Johnson, Your Honor, are that they are situations factually distinguishable from our case here. Those cases dealt with documents, if I'm not mistaken, that were in the possession of a third party, that did not belong necessarily to the parties who were aggrieved by the administrative subpoena. But here, in contrast, we have a situation where the documents in question are not similar to, for example, phone records, that when the phone company is issued a subpoena to turn over phone records, those records belong to the phone company. Here we're dealing with a situation with voluminous documents that belong to the Hells Angels. They, in my view, should have been given the opportunity, and I think that Plunk is distinguishable on this point, should have been given the opportunity to contest the seizure of those documents. But there's the case involving the purse. That belonged to the person who owned the purse. I'm sorry, Your Honor? I say there's the case involving the purse. The purse belonged to the... Well, indeed, that's a very good point. I believe that's Burnett, Your Honor. The purse belonged to the individual. However, the distinguishing point in that case is that the court alluded to the fact that there was continuing probable cause to search the purse. Here, there's no indication that as soon as the Monterey County District Attorney's Office was no longer in need of those documents, there's no evidence there was a continuing probable cause to seize them pursuant to the 876 warrant. But, counsel, what do we do with the language in Johnson that says, once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant. What do we do with that language? Your Honor, very good point. And my suggestion, the way we deal with that line of authority is that, as we argued in the brief, that, in fact, there was an interrupted police investigation. In other words, it's not one continuous investigation. But it says interrupted possession, not investigation. It says as long as there is a legitimate uninterrupted possession. Well, the possession being, in other words, my point about that is that it may have been in possession of the Monterey County District Attorney's Office, but at the point that Mr. McKinley issued the 876 subpoena, was, and mind you, at that point, it was to be returned to my clients. It wasn't as if there was no intention by the Monterey County District Attorney's Office to return it. They were all ready to give it back. At that point is when McKinley issued the 876 subpoena. My argument, therefore, is that in the context of possession, having possession of the documents, perhaps they were. But from a legal point of view, I believe the possession, for purposes of the Fourth Amendment, the possession terminated at the time that the Monterey County no longer had need for the documents and they were ready to turn them over. And so do you have case authorities? No. Okay. I'm sorry. You're going on your analysis. I understand this is your interpretation of the Fourth Amendment. Mr. Weissman, how is FBI agent McKinley supposed to know that? Your Honor, I think that one is supposed to know that because we're dealing with a very experienced FBI agent. We're dealing with somebody who had 20 years of experience prior to the time that he issued the document. Mr. Weissman, is he supposed to know that Monterey has terminated its investigation and is about to return these documents? Your Honor, it is our position that it was more than that. It was almost a pretext, if you will. In other words, what we say in the second amended complaint, which I did not litigate this in the court below, so I did not draft any part of those complaints, but the position that was taken in the court below was that Mr. McKinley worked in concert with the Monterey County District Attorney's Office to effectuate the county search warrant to acquire that search warrant. It wasn't as if he was not involved in the underlying seizure of those documents. We believe, in fact, he was. Counsel, do you believe that the Fourth Amendment was violated in the initial seizure? No. We did not contest the initial seizure, Your Honor. So we are not arguing that the Fourth Amendment was violated in the initial Monterey County. Did Mr. McKinley follow the requirements of 876? On its face, it appears that he did. Is 876 unconstitutional, then? 876, in my view, Your Honor, is unconstitutional to the extent that it states, or rather, that it does not provide for a pre-seizure notice in the context of this kind of case. Yes, I would argue that it's unconstitutional. Is it unconstitutional on its face or is it applied? I would say that it's unconstitutional as it applies in this particular case. I can envision a situation where there are not, for example, not voluminous documents that the FBI is attempting to obtain, or those documents belong to a third party, such as a telephone company. But when you're in a situation, which we are confronted with in this case, where you have two truckloads of documents seized from a clubhouse, which are owned by the aggrieved party, I would argue that 876 requires a pre-seizure notice. I believe that Judge Walker agrees with this, and that's what the basis of his decision below was. I don't believe, I don't agree with Judge Walker that that right was so unclear at the time that McKinley issued the subpoena that he's entitled to qualified immunity. I believe in the context of the case, based upon his experience, that he should have known and any reasonable officer would have known. And the other point I want to make with respect to that is, as the Court knows, particularly in the Headwaters case, which I've indicated that I'm relying upon and I've given counsel a copy, this Court has said that one does not have to always look, have a specific case on point to get around the defense of qualified immunity. And I believe it's on page four of the Headwaters opinion. And although I can't cite to a specific case other than that which Judge Walker decided and wrote, I believe that, again, in the context of this case, it would be clear to any reasonable officer that at least a minimum of notice is required under the Fourth Amendment, notwithstanding what appears to be the language of 876, which does not provide notice. But when you have a case in which there is an expectation of privacy, which Judge Walker concluded my clients had, then at least procedure notice, in my view, is required under the Fourth Amendment. Counsel, how can the health angels have an expectation of privacy in materials that are being held by the Monterey County Police Department? I don't think the expectation of privacy is vitiated as soon as they are removed from the clubhouse.  One of the issues in the case was whether or not Mr. McKinley disclosed certain private facts about one member of the health angels, in particular Sonny Barger, who was formerly the president and the founding member of the health angel. If he did that, in fact, we don't know because we weren't able to pursue discovery, but if he would have done that, I think that, for example, Mr. Barger would have still had an expectation of privacy in those personal facts, even though the documents that revealed those facts were seized pursuant to a valid search warrant. I don't think that necessarily, simply because there has been a valid search warrant taking possession of certain documents, that under 876 and under the Fourth Amendment, one loses all indices of expectation of privacy. I think that you still have it. I think there's, at a minimum, a residual amount of expectation of privacy, and that's what Judge Walker, in fact, concluded, that my clients had an expectation of privacy. Ergo, the Fourth Amendment was violated by failure to give them notice. And I agree with that aspect of Judge Walker's opinion. I obviously respectfully don't agree with the position of giving qualified immunity. And so in the context of this case, and I think it's important to keep that in focus, we're dealing with, again, two truckloads of documents. I think the facts that are presented in this case make it distinguishable from Plunk, from Burnett, from Johnson, the other cases that the government cited, and I believe that this Court ought to hold that in this context, there is not qualified immunity, that it's a defense to McKinley's lawsuit against McKinley. I'll submit it unless there's any further questions, and reserve three minutes of my time. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Tracy Brown for the appealee, Timothy McKinley. Your Honors, I believe this judgment should be affirmed for two reasons. First, because Judge Walker was absolutely correct in granting qualified immunity to the appealee, because there were no clearly established precedents supporting a constitutional right to prior notice  under 21 U.S.C. 876 for materials that had previously been searched and seized by a state law enforcement agency. So this Court — Do you agree with the district court judge that there was a constitutional violation? Absolutely not, Your Honor, and I think that the judgment can be affirmed in favor of the appealee, but on a different ground, which is that the district court erred in holding that there was a constitutional violation in the first instance, and here's why. Because the district court attempted to distinguish cases such as Holtzman, Johnson, Burnett, and Thompson based on a purported plain view requirement, holding, quote, that the sheer volume of items seized belies the notion that these items were in the plain view of law enforcement custodians, or that the initial search completely eliminated plaintiff's expectation of privacy in the items. The problem with this theory is twofold. One, the Ninth Circuit's decision in — decisions in Holtzman, Johnson, and Burnett had nothing to do with a plain view requirement. That concept was articulated by the Fifth Circuit in Thompson, and, in fact, the Ninth Circuit in Holtzman expressly eschewed reliance on a plain view rationale. Secondly — Counsel, the — as I understand it, the appellants have tried to draw a distinction between items that are — have been lawfully seized and items that may be lawfully searched once they have been seized. Is there any — what authority do you have for suggesting that Monterey could have searched all of the items, these two truckloads of items that they seized? As I understand it, counsel for Hells Angels has admitted that the first subpoena was lawfully issued — I'm sorry, the warrant for the search. Could these documents then have been — I'm sorry, they could have been lawfully seized. Could they have been searched as well by Monterey prior to the 876 subpoena being issued? Yes, and I think they were, and that's admitted, frankly, in the second amended complaint where the Hells Angels allege that after seizing the documents, the county of Monterey then painstakingly catalogued and created a 13-page inventory list. So they went through all of the items that were seized and then analyzed them and created this very lengthy catalog. In addition, I don't think that — Counsel, isn't there — it's not clear whether or not they actually reviewed in depth each one of the documents. That's true, Your Honor, but under Ninth Circuit precedent, the extent of the initial search is not dispositive. For example, in Burnett, the initial search of the purse was described as, quote, brief and, quote, cursory. Likewise, in Johnson, the mere fact that the state officer could have looked at the serial numbers on the cash of the defendant before he placed it in an envelope was held to be enough to reduce the defendant's expectation of privacy so that a subsequent search to look for those serial numbers at the request of the FBI was held not to be a Fourth Amendment violation. So in both of those cases, the initial search was far from thorough, and yet this Court appropriately held that there was no remaining expectation of privacy in the materials because they were already legitimately in the hands of state law enforcement and, therefore, no Fourth Amendment violation by a subsequent search. What is your answer to the appellant's point that you did not cross-appeal on the ruling that it was a constitutional violation? The point on that is that we're, of course, not attacking the judgment. The judgment was in favor of the appellee, and there's longstanding case authority cited in both Johnson and Burnett, I believe, that you can affirm on any basis that finds support in the record. And it's our view that holding that there was no constitutional violation in the first instance is well supported in the record and in the case law. So we're not attacking the judgment. We're simply attacking one of the or not attacking, suggesting a different basis for affirming the judgment. You can affirm on either the finding that there's no qualified immunity or by finding that there was no constitutional violation in the first instance. Unless Your Honors have further questions, I'm happy to sit down and submit. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honor. I'll try and be brief on this. I'd like to respond to Judge Noonan's point regarding the waiver. It is our position that, in fact, the government waived the argument addressing the issue of whether or not Judge Walker was right in indicating or ruling, rather, that there was a constitutional violation. The reason I say that is because, again, going back to Saucier, there is this two-pronged analysis, as Your Honors know. One is do you decide whether there was a constitutional violation? If, in fact, there was, the second prong is ignored. In this case, we, the appellants here, file an appeal on the second prong of Saucier, that is whether or not qualified immunity was appropriate. Mr. McKinley did not appeal Judge Walker's ruling on the underlying case, or issue, rather, of whether there was a constitutional violation. So I would argue that that issue is waived. And the only issue, if I may suggest, that is before this Court is, is there qualified immunity? Mr. Weisman, if you had not filed a notice of appeal, surely you would not have expected the government to file its own notice of appeal so it could contest the Fourth Amendment question, would you? Your Honor, I would have expected the government to file a notice of appeal. In a case in which they won? Well, yes. The reason why, they won the issue of qualified immunity, but they did not win the fundamental issue of whether or not there was a Fourth Amendment violation. If I were in the government's position, I would have appealed that argument, or rather, I would have appealed that decision in this particular case, saying there was a Fourth Amendment violation. And in that case, Mr. Weisman, would you have been free to argue that the judge was wrong on his qualified immunity question? If I did not cross appeal, I don't believe I would have. And in that case, Mr. Weisman, there would have been no need for you to have shown up in that case, would there? No, there would not. So it would have been a one-sided appeal by the government, in which you would have had no interest because you would have lost the case anyway. Well, if the government would have appealed the underlying issue of the constitutional violation, then I certainly would be free, in my view, to argue that the judge was right. But you would have lost the case anyway, so there would have been no reason for you to have spent your client's time or money on that case, would there? Well, that's true, but I think that in terms of this particular case, I would have lost because the second prong, I lost the second prong, that is, qualified immunity. But I can envision a situation in which appellants would be very interested in making sure that the issue on the first prong of CELCIE, i.e., whether there was a constitutional violation, should be litigated in the Court of Appeals. I'm not sure simply if I would have lost the case, nevertheless, whether that first prong, therefore, should have been ignored. I think the Court, if the government would have appealed it, it would have been an issue to address, even though I may have lost the underlying case. Mr. Weisen, would you address the question that I asked Ms. Brown, that is whether Monterey had the right to search the documents that they had seized? Pursuant to the underlying search warrant, I would concede, Your Honor, that the Monterey did, in fact, have the right to search the item seized. And did they, in fact, search them? Your Honor, I can only – I believe they did. I don't know for a fact because, again, this case was not developed in discovery, but I believe, in fact, there was a search of the documents because I know that those documents were at least viewed in the context of that murder investigation and prosecution. So I would concede for the sake of argument that they did search them. Then wouldn't the Hells Angels have a diminished expectation of privacy in documents that have been both lawfully seized and lawfully searched? Would they have a diminished expectation of privacy? I think that their expectation of privacy would have been diminished. However, it wasn't utterly initiated. And I believe that at the point that the administrative subpoena was issued and lighted the context of the case and the voluminous nature of the documents, at a minimum, as I've said before, there should have been procedure notice. Notwithstanding, certainly the expectation of privacy is diminished but not evaporated. And I think Judge Walker agreed in his decision with that notion that there is still an expectation of privacy. Certainly at the moment that the administrative subpoena, the 876 subpoena was issued. And even though Mr. Brown, I'm sorry, Mr. McKinley had been involved in procuring the initial warrant, those documents had been lawfully seized and lawfully searched by Monterey County. And Agent McKinley now has issued a subpoena pursuant to 876, but nevertheless he is responsible for knowing that he is violating the Fourth Amendment because the privacy interest has not been utterly vitiated. Your Honor, my time is up. May I respond? I do believe that because I think one has to look at the purposes of the search warrant in the underlying Monterey County case as opposed and in contrast to the 876 purposes. Our position is that McKinley issued that 876 subpoena for a purpose other than what is described in the statute. We don't know what that was, but we believe that it was not consistent with the terms and the language of the statute. So I don't think the expectation of privacy is gone, nor do I believe that even though it's diminished, Mr. McKinley has no obligation to give my client's procedure notice of what he intended to do. Counsel, before you conclude, on the issue of the government's waiver on the constitutional finding, what do you do with the language in our cases such as Rivera v. City and County of San Francisco where we say prevailing parties need not have filed cross appeals in order to correct errors in the district court's reasoning? What do you do with that language? Your Honor, I think the distinction there is the reasoning in this particular case and in the context of a qualified immunity case, I think one has to look at both prongs of Saucier v. Katz. The underlying initial question of A, was there a constitutional violation? If so, then B, is there qualified immunity? And I believe with the structure of Saucier and how the U.S. Supreme Court has articulated that, one has to in this particular case, my view is McKinley needed to appeal, file a notice of appeal. But isn't that part of the reasoning that the district court had to undertake in order to come to the ultimate conclusion regarding qualified immunity? It had to do the reasoning on both prongs of the test? Well, if Judge Walker had decided that there was no constitutional violation, it would have been the end of the story. I understand, but he didn't. He didn't. My clients prevailed with respect to that issue. The second prong is, in my view, what we're litigating here. I think the first prong has been resolved, and I think that in fact since McKinley did not appeal that, this Court need not address that. So it's your view that that could not be considered part of the reasoning of the district court in order to resolve the ultimate issue in the case? I believe there is a sufficient distinction between the two prongs of South CA that, yes, I would agree with that, Your Honor. All right. Thank you, counsel. Thank you. Thank you, counsel. The case just argued stands submitted.
judges: Noonan, Rawlinson, Bybee